**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID LEE MATHIS, | ) | Case No. 1:21-CV-00169-SO |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| KENNETH BLACK, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.  INTRODUCTION

Petitioner, David Lee Mathis ("Mr. Mathis"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Mathis is serving a sentence of 20 years to life for: (1) five first-degree felony counts of rape in violation of R.C. § 2907.02(A)(1)(b); (2) two third-degree felony counts of gross sexual imposition in violation of R.C. § 2907.05(A)(4); and (3) one second-degree felony count of kidnapping with a sexual motivation specification in violation of R.C. §§ 2905.01(A)(4) and 2941.147(A).

Mr. Mathis asserts four grounds for relief. Respondent, Warden Kenneth Black ("Warden"), filed an answer/return of writ on May 21, 2021. (ECF No. 6). Mr. Mathis filed a traverse on August 4, 2021 and a corrected traverse on August 5, 2021. (ECF Nos. 9, 10).

This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Mathis' petition. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr. Mathis' petition be DISMISSED and/or DENIED. I further recommend that this Court not grant Mr. Mathis a certificate of appealability.

1

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

{¶ 2}  The following facts were adduced at trial. After an altercation with other students at school, A.T., the 12-year-old victim in this case, went to the Windermere rapid station rather than taking the school bus home. A.T. intended to take the rapid to her father's house but she instead met Mathis.

{¶ 3}  Mathis, who was over 50 years old at the time, was running a cafe at the rapid station. Mathis told A.T. that she looked pretty and he cooked her some food. A.T. told Mathis about the incident at school. She also told him that she was afraid her mother would be upset because she was given a detention that day.

{¶ 4}  Mathis told A.T. that he would provide her a motel room for the evening where she could stay by herself. She agreed. After closing the cafe, Mathis drove A.T. to a nearby motel. Once they were in the room, A.T. described how Mathis hugged and kissed her. She testified that she was scared. Mathis got undressed and he removed A.T.'s school uniform. A.T. testified that Mathis kissed her breasts and vagina. Mathis penetrated her vagina digitally and with his penis. A.T. stated that Mathis took a condom out of his pocket and put it on before having sex with her. After he finished, he flushed it down the toilet. Police found a portion of a condom wrapper in the room.

{¶ 5}  Mathis told A.T. that he was leaving for the night to go home to his wife but that he would likely return for her in the morning. A.T. explained that she did not leave the motel because it was nighttime. Instead, she redressed in her uniform and slept in the bed.

{¶ 6}  In the morning, Mathis did return and he undressed both himself and A.T. He kissed her breasts and vagina again before he put on a condom and proceeded to have vaginal sex with her. After he finished, he flushed the condom down the toilet.

{¶ 7}  Mathis agreed to A.T.'s account of the events for the most part, disputing it to the extent that she claimed he touched her or had sex with her. Mathis did admit that he had sex on the bed in that motel room the evening he met A.T., but asserted that it

2

was before he brought A.T. to the motel and was with an adult woman whom he described as a "friend."

{¶ 8} The next day A.T. was taken to the police station after she was reported as missing the night before. There, during an interview with officers, A.T. explained how she met Mathis at the cafe. She stated that he offered to take her to a motel for the evening, that he left her there by herself overnight and that he returned in the morning and drove her to a friend's house. A.T. disclosed and detailed Mathis touching, kissing and having sex with her.

{¶ 9} A.T. was taken to Rainbow Babies and Children's Hospital where she was examined and treated for sexual assault. She was still wearing her school uniform. She told the nurse examining her the same version of events that she told to the police officers, detailing the vaginal intercourse as well as the extent to which she was touched, kissed and licked both the previous evening as well as that morning. As part of A.T.'s examination and treatment, a rape kit was collected from A.T. which included the clothing she was wearing as well as swabs taken from various parts of her body.

{¶ 10} DNA analyses were performed on these items. The analyses indicated that Mathis' genetic material was present in multiple items including swabs from A.T.'s breasts and the inside crotch of her underwear, anal swabs and fingernail scrapings.

{¶ 11} At trial, A.T. testified to the same version of events that she communicated to the police officers as well as to the nurse at the hospital. She further explained that she did not initially disclose the extent of the physical contact with Mathis because she was scared. She stated that during her interview with police she started having "flashbacks" about what had happened and "saw everything in [her] head" and that is what prompted her to eventually relate the whole story to the officers.

{¶ 12} Mathis testified at trial, agreeing with A.T.'s timeline of events but disputed ever having sex with or touching her. Instead, he claimed A.T. was lying and argued that any of his genetic material found in the rape kit was transferred to A.T. when she slept in the bed where Mathis and his friend had previously had sex. After hearing the evidence at trial, the jury found Mathis guilty. This appeal follows.

(ECF No. 6-1, Exhibit 12); *State v. Mathis*, No. 107365, 2019 WL 4316889, 2019-Ohio-3654 (8th Dist. Sept. 12, 2019).

## III. PROCEDURAL HISTORY

### A. State Court Conviction

On November 29, 2016, Mr. Mathis was indicted in the Cuyahoga County Court of Common Pleas on the following offenses: (1) six first-degree felony counts of rape in

violation of R.C. § 2907.02(A)(1)(b); (2) three third-degree felony counts of gross sexual imposition in violation of R.C. § 2907.05(A)(4); and (3) two second-degree felony counts of kidnapping with a sexual motivation specification in violation of R.C. §§ 2905.01(A)(4) and 2941.147(A). (ECF No. 6-1, Exhibit 1). On December 6, 2016, Mr. Mathis pled not guilty to all charges. (ECF No. 6-1, Exhibit 2).

On January 10, 2018, Mr. Mathis, through counsel, filed a motion *in limine* to exclude the testimony of Christine M. Scott, an analyst at the Cuyahoga Regional Forensic Laboratory, regarding DNA evidence analyzed using a technology known as TrueAllele. (ECF No. 6-1, Exhibit 3). As the trial court described it, TrueAllele is a "probabilistic genotyping program" that "works by considering all available DNA evidence and having the computer program try hundreds of possibilities to explain the evidence." (ECF No. 6-1, Exhibit 5).

In the motion, Mr. Mathis argued that the State had not demonstrated that the TrueAllele technology was reliable or that Ms. Scott was qualified to testify regarding the technology under the standards set forth in *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). Mr. Mathis also argued that he was entitled to a *Daubert* hearing regarding whether Ms. Scott was qualified to provide the anticipated testimony. The State opposed the motion, arguing that testimony regarding TrueAllele analyses had been admitted in numerous cases throughout the country, including a prior case in Cuyahoga County. (ECF No. 6-1, Exhibit 4). The State also argued that Ms. Scott had been trained on the use of the technology and that the technology had been tested through numerous validation studies.

The trial court held a *Daubert* hearing on April 3-4, 2018. (ECF No. 6-1, Exhibit 5). On April 13, 2018, the trial court denied Mr. Mathis' motion *in limine*, holding that the

4

TrueAllele technology was reliable and admissible pursuant to Ohio Rule of Evidence 702 and that Ms. Scott was qualified to give testimony regarding the results of the TrueAllele analysis. *Id.*

The case proceeded to a jury trial. During the trial, Ms. Scott testified that Mr. Mathis could not be excluded as the source of a DNA sample found in the victim's underwear where the result of the TrueAllele analysis was inconclusive due to an insufficient amount of genetic material. In addition, the prosecution asked several of Mr. Mathis' character witnesses whether their opinion of him would change if they knew that: (1) he had previously been convicted of assault; and (2) he had previously been charged with domestic violence. It is undisputed that the prosecution's first question was erroneous: Mr. Mathis has never been convicted of assault. It is also undisputed that, while Mr. Mathis was charged with domestic violence, he was not convicted of that offense and instead pled guilty to a lesser offense. The Eighth Appellate District found that Mr. Mathis' counsel objected to the prosecution's reference to an assault conviction the first time the prosecution asked the question, but did not repeat the objection with respect to subsequent references after the trial court overruled the initial objection. (ECF No. 6-1, Exhibit 12, ¶ 47).

At the close of its case, the State dismissed Counts Five (gross sexual imposition) and Eight (rape). (ECF No. 6-1, Exhibit 6). The case proceeded to verdict on the remaining counts. On April 26, 2018, the jury found Mr. Mathis guilty on all counts. (ECF No. 6-1, Exhibit 7).

On May 31, 2018, the trial court sentenced Mr. Mathis. (ECF No. 6-1, Exhibit 8). The court merged counts Six (rape) and Nine (kidnapping). The court sentenced Mr. Mathis to a term of life with a possibility of parole after 20 years on each of the rape counts (Counts One, Two, Three, Six, and Seven). The court also sentenced Mr. Mathis to a term of five years on

both of the gross sexual imposition counts (Counts Four and Eight). Finally, the court sentenced Mr. Mathis to a term of life with a possibility of parole after 20 years on the kidnapping count, Count Five. The court ordered that Mr. Mathis' sentences on all counts would run concurrently to each other, for a total sentence of 20 years to life.

**B.  Direct Appeal**

On June 25, 2018, Mr. Mathis, through new appellate counsel, timely filed a notice of appeal to the Eighth District Court of Appeals. (ECF No. 6-1, Exhibit 9). In his appellate brief, Mr. Mathis raised the following assignments of error:

1. Mr. Mathis was denied a fair trial when the government repeatedly and inaccurately told jurors that Mr. Mathis was convicted of assault, a crime of violence, which he never committed.

2. The trial court erred in allowing the government to present evidence that the appellant could not be excluded from a DNA mixture that its own expert testified was inconclusive.

3. The appellant was denied the effective assistance of counsel.

4. The trial court erred when it permitted the government to present evidence that child-victims frequently issue denials as part of the process of disclosure.

5. The trial court erred in permitting the government to present inadmissible victim-impact evidence.

6. The cumulative errors committed in this case deprived Mr. Mathis of a fair trial.

(ECF No. 6-1, Exhibit 10).

On September 12, 2019, the Eighth Appellate District affirmed Mr. Mathis' sentence. (ECF No. 6-1, Exhibit 12). On October 28, 2019, Mr. Mathis, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 6-1, Exhibit 13). In his memorandum in support of jurisdiction, Mr. Mathis raised the following propositions of law:

1. Conceded error that directly impacts the credibility and/or character of the accused in a case that is largely a he said/she said contest cannot be harmless error.

6

2. A DNA profile that is inconclusive is not admissible evidence that can be relied upon to prove the guilt or non-guilt of the accused.

3. Trial counsel is ineffective when counsel fails to object to improper impeachment evidence directed at the accused and fails to interview and prepare character witnesses for cross-examination.

4. A lay witness' testimony about the disclosure process of a child-victim is inadmissible opinion testimony that is tantamount to bolstering and a comment on the credibility of the alleged victim's allegations.

(ECF No. 6-1, Exhibit 14). On January 21, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 6-1, Exhibit 15).

**C. <u>Federal Habeas Action</u>**

On January 21, 2021, Mr. Mathis, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Mathis' habeas petition raises four grounds for relief:

1. Ineffective assistance of counsel.

2. Prosecutorial misconduct resulting in a violation of Petitioner's due process rights.

3. Admission of powerful, misleading evidence resulted in a violation of Petitioner's due process rights.

4. The introduction of unnoticed, unsummarized expert testimony to bolster accuser credibility resulted in a violation of Petitioner's right to due process.

*Id*. The Warden filed an answer/return of writ on May 21, 2021. (ECF No. 6). Mr. Mathis filed a traverse on August 4, 2021, and a corrected traverse on August 5, 2021. (ECF No. 9, 10).

**IV. STANDARDS OF REVIEW AND GOVERNING LAW**

**A. <u>Jurisdiction</u>**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of

the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Mathis, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Mathis' § 2254 petition.

**B. Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies

were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim –

supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

11

applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

Mr. Mathis argues that habeas relief is warranted because: (1) he received ineffective assistance of trial counsel in violation of the Sixth Amendment; (2) the prosecution engaged in misconduct by asking witnesses about a nonexistent assault conviction and a domestic violence arrest for which Mr. Mathis was not convicted; (3) his due process rights were violated when the trial court admitted testimony that he could not be excluded as the source of a DNA sample using the TrueAllele technology; and (4) his due process rights were violated when a witness was permitted to testify that it is common for child sexual abuse victims to initially deny the abuse, thereby bolstering the credibility of the victim. The Warden argues that Mr. Mathis procedurally defaulted on his claim that the introduction of DNA evidence violated his due process rights and that all of Mr. Mathis' claims are non-cognizable and/or fail on the merits. For the reasons set forth below, I conclude that the Warden's arguments are well-taken.

### A.  <u>Ground One: Ineffective Assistance of Trial Counsel</u>

In his first ground, Mr. Mathis argues that his trial counsel was ineffective in violation of his Sixth Amendment rights. A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in

the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

Mr. Mathis argues that his trial counsel was ineffective in two ways: (1) failing to repeatedly object to the prosecutor's questions regarding his alleged prior criminal history; and (2) failing to interview or prepare one of Mr. Mathis' character witnesses before calling that witness at trial. I will consider each argument in turn.

### 1. Failure to Object to Questions Regarding Criminal History

Mr. Mathis first argues that his trial counsel was ineffective in failing to object to questions the prosecution asked his character witnesses regarding his purported criminal history. Mr. Mathis argues that his counsel should have objected to questions regarding a prior assault conviction because he had never been convicted of assault. Mr. Mathis also argues that his counsel should have objected to questions regarding a prior domestic violence arrest because Mr. Mathis was not convicted of that offense.

Mr. Mathis raised the same arguments before the Eighth Appellate District, which addressed them on the merits. Where, a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA

14

deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

> *Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

In rejecting Mr. Mathis' ineffective assistance of counsel claim on this issue, the Eighth Appellate District held as follows:

> {¶ 47} Review of the record reflects that Mathis' counsel objected the first time the prosecutor inquired about the purported assault conviction during cross-examination of the first character witness. The court overruled that objection. The record also reflects that counsel did not object when the prosecutor inquired the same of the subsequent three character witnesses.

> {¶ 48} "Objecting is a tactical decision." *State v. Frierson*, 8th Dist. Cuyahoga No. 105618, 105 N.E.3d 583, 2018-Ohio-391, ¶ 25, citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. Accordingly, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Id*., quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103. Moreover, this court has recognized that a defendant "need not repeat an objection if it would serve no further purpose or if the judge's earlier ruling is conclusive." *State v. Cummings*, 8th Dist. Cuyahoga No. 79709, 2002-Ohio-4178, ¶ 14, citing *State v. McCleod*, 7th Dist. Jefferson No. 00 JE 8, 2001-Ohio-3480, ¶ 48-49; *see also State v. Mitchell*, 53 Ohio App.3d 117, 119, 559 N.E.2d 1370 (8th Dist.1988) ("[A] trial attorney does not violate any substantial duty in failing to make futile objections.).

15

{¶ 49} Here, Mathis has not shown that counsel's failure to subsequently object to mention of the purported assault conviction constitutes deficient performance. Moreover, Mathis has failed to show prejudice. He has not shown that there is a reasonable probability that had counsel objected to the prosecutor's question posed to the other character witnesses that the result of the trial would have been different. *See State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 51 (8th Dist.).

(ECF No. 6-1, Exhibit 12).

Applying the double layer of deference under AEDPA, the Eighth Appellate District did not err in holding that the performance of Mr. Mathis' trial counsel did not fall below an objective standard of reasonableness simply because counsel failed to renew objections to questions regarding the nonexistent conviction for assault or the domestic violence arrest after the trial court overruled counsel's initial objection. Rather, as the Eighth Appellate District correctly held, counsel generally is not ineffective in failing to repeat an objection that the court has already overruled. *See United States v. Neuhausser*, 81 F. App'x 56, 62 n. 5 (6th Cir. 2003) (holding that counsel "was not ineffective for failing to repeat an objection that had already been overruled"). Applying the double layer of deference, the Eighth Appellate District also did not err in holding that Mr. Mathis failed to demonstrate a reasonable probability that the trial would have had a different outcome had his counsel objected given the victim's testimony and the other evidence supporting his guilt, including DNA evidence.

### 2. *Failure to Prepare Character Witness*

Mr. Mathis also argues that his trial counsel was ineffective in failing to meet and prepare one of his character witnesses. Mr. Mathis argues that his counsel's failure to prepare the witness damaged his case because the witness testified that certain facts, including Mr. Mathis' prior domestic violence arrest and (nonexistent) assault conviction "surprised" the witness and gave him pause. Mr. Mathis argues that this testimony substantially hurt his case and could have been avoided had his trial counsel properly prepared the witness before the

witness took the stand.

The Eighth Appellate District considered this argument on direct appeal, rejecting it

as follows:

{¶ 50} Mathis also claims that counsel was ineffective because he allegedly failed to meet with and prepare one character witness prior to trial. Mathis attempts to support this claim based upon the following exchange:

The Court: I saw [the character witness] back there. I obviously didn't know who he was. It's my understanding the Defense wishes to call him. Is there going to be an objection from the State of Ohio?

Prosecutor: It's my understanding he is simply being called as a character witness. If that's the case, the State doesn't feel like his exposure to the other witnesses is going to cause any change of his testimony, so I do not.

Counsel: I appreciate the courtesy of the State, your Honor. I apologize. I had never met the gentlemen, and didn't know who he was either.

{¶ 51} Based on counsel's statement, Mathis concludes that counsel "fail[ed] to interview and prepare any of his character witnesses for cross-examination * * *." We reject this unsupported conclusion. It is not clear how the counsel's statement that he had not met one particular witness supports the conclusion that he did not "interview and prepare" any of the character witnesses. More to the point, it does not necessarily follow that counsel failed to "interview and prepare" the witness in question based on counsel's statement that he had not met the witness and did not know who he was. For example, it is possible that counsel talked with and prepared the witness over the phone. The record before us simply does not show the extent of counsel's witness preparation. *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 162, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 391, 2000-Ohio-448, 721 N.E.2d 52 ("To establish that [counsel did not fully interview or adequately prepare a witness] 'would require proof outside the record,' and such a claim 'is not appropriately considered on a direct appeal.' "). As such, Mathis does not establish deficient performance.

{¶ 52} Nevertheless, were we to assume counsel was deficient, Mathis still needs to prove this caused him prejudice. As to this prong, Mathis claims the character witness' testimony during cross-examination caused him "immeasurable" prejudice. Mathis points to the witness' testimony that he learned of Mathis' domestic violence arrest and conviction for assault and domestic violence during a previous witness' testimony and that it "surprise[d]" him. The witness also testified that he found it "surprising" to hear testimony earlier that day regarding Mathis having sex in a motel with his "friend," a woman who was not his wife. When asked about whether Mathis discussed the specific allegations in the case the witness said that he had not. The witness stated that the fact Mathis did not discuss the case when he asked him to be a character

witness "[gave him] pause" and "concern[ed] him." Mathis argues that these responses were "highly damaging" and resulted in "immeasurable" prejudice. We disagree.

{¶ 53} Regardless of the witness' statements made during cross-examination, he was unequivocally positive about Mathis during his direct and redirect examinations which, as indicated, occurred after he was made aware of Mathis' prior arrest and convictions as well as the specific allegations in the case. During his direct examination, the witness stated he had known Mathis for approximately 20 years and that Mathis was his employee. Further, he testified that he and Mathis were friends, that he personally believed that Mathis was trustworthy and that he believed that to be his reputation in the community. During redirect examination, the witness confirmed that during the time he had known Mathis, both socially and businesswise, Mathis "never once" did anything that gave him "pause or concern."

{¶ 54} We disagree with Mathis' characterization of this testimony as "highly damaging," or that he has established a causal link between the witness' testimony and counsel's alleged lack of preparation. Further, Mathis has nevertheless failed to demonstrate prejudice: he has not shown a " 'reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 82, quoting *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 at 694.

(ECF No. 6-1, Exhibit 12).

Applying the double layer of deference under AEDPA, the Eighth Appellate District did not err in holding that the record was unclear regarding whether Mr. Mathis' counsel met with the witness at issue. Nor did the Eighth Appellate District err in holding that Mr. Mathis failed to establish prejudice from any ineffective assistance given the limited nature of the witness' testimony, the witness' otherwise positive statements regarding Mr. Mathis' character, and the other evidence supporting Mr. Mathis' conviction. Accordingly, I recommend that the Court deny Mr. Mathis' first ground for relief.

### B.  Ground Two: Prosecutorial Misconduct

In his second ground for relief, Mr. Mathis argues that the prosecution engaged in misconduct by asking multiple character witnesses if their opinion of Mr. Mathis would change if they knew that he had been convicted of assault when Mr. Mathis had not, in fact,

18

been convicted of assault. Mr. Mathis also argues that the prosecution engaged in misconduct by asking about a prior domestic violence arrest when that arrest did not lead to a conviction.

Under certain circumstances, prosecutorial misconduct can serve as the basis for habeas relief. *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). However, "[p]rosecutorial misconduct can merit habeas relief only if the prosecutor's remarks render the trial so unfair as to be a denial of due process." *Moore v. Mitchell*, 708 F.3d 760, 799 (6th Cir. 2013). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Moreover, the prosecution's conduct "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). In addition, a harmless error analysis applies to prosecutorial misconduct claims on habeas review. *See Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

The Warden argues that it was appropriate under Ohio law for the prosecution to ask witnesses about Mr. Mathis' domestic violence arrest even though he was not convicted of that offense. The Warden also suggests that the prosecution may not have engaged in any misconduct by asking about a nonexistent assault conviction. The Warden asserts that "the prosecutor was well within Ohio's evidence rules to question his character witnesses about their knowledge of Mathis' prior criminal activity—including his arrest for domestic violence and conviction on a lesser offense." (ECF No. 6, PageID # 62). I disagree with respect to the

19

prosecution's questions regarding an assault conviction. Contrary to the Warden's suggestion, the prosecution did not question witnesses regarding Mr. Mathis' conviction on a lesser offense. Rather, the prosecution asked witnesses if their opinions of Mr. Mathis would change if they knew he had been convicted of assault even though no such convicted existed. I agree with Mr. Mathis that it was improper for the prosecution to do so. Notably, the State conceded on direct appeal that the prosecution's questions were improper with respect to the assault conviction. (ECF No. 6-1, Exhibit 12, ¶ 14) ("[t]he state concedes that it was error for the prosecutor to have inquired about the alleged assault conviction").

The Eighth Appellate District held, however, that any prosecutorial misconduct was harmless in the context of the trial as a whole:

{¶ 26} Review of the record indicates that the prosecutor asked a version of the same question to each of the four character witnesses:

Would your opinion of Mr. Mathis change if you knew that he was arrested for domestic violence, and convicted of disorderly conduct and assault in relation to that arrest?

* * *

After finding out Mr. Mathis has been arrested for domestic violence, admitted to an assault and disorderly conduct involving another person, did that change your opinion of his standing in the community?

* * *

Would it change your opinion of Mr. Mathis if you knew that he was arrested for domestic violence and pled guilty to assaulting someone and committing a disorderly conduct?

* * *

Would your opinion change of Mr. Mathis if you knew that he had been arrested for domestic violence, and he pled guilty to assaulting somebody in a disorderly conduct based on that arrest of domestic violence?

{¶ 27} As previously stated, Mathis concedes that he was previously charged with domestic violence and convicted of disorderly conduct. Even were we to assume that the state's mention of an assault conviction was improper, when viewed in the context

20

of the entire trial, we find the state's reference to an assault conviction in this context to be harmless. *See Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092 at ¶ 172; *see also Gillard*, 40 Ohio St.3d 226, 533 N.E.2d 272, 535 N.E.2d 315 at paragraph two of the syllabus.

(ECF No. 6-1, Exhibit 12).

A federal court must give deference to a state court's determination of a prosecutorial misconduct claim so long as the state court actually adjudicated the merits of the claim. *See Bates*, 402 F.3d at 641; *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Because the Eighth Appellate District's determination is entitled to deference, habeas relief is warranted only if no "fairminded jurist[]" could agree with the Eighth Appellate District's assessment. *Harrington*, 562 U.S. at 101. Here, fairminded jurists could agree with the Eighth Appellate District's ruling that the prosecution's brief references to a nonexistent assault conviction during questioning of Mr. Mathis' character witnesses did not render his trial so unfair as to be a denial of due process when considered in the context of the trial as a whole.

I reach the same conclusion with respect to Mr. Mathis' argument that the prosecution improperly asked his character witnesses about a prior domestic violence arrest even though Mr. Mathis was not convicted of domestic violence. The Eighth Appellate District again rejected that argument on the merits, holding as follows:

{¶ 19} Cross-examination can include inquiry into the witness's awareness of the defendant's prior arrest, even where it did not lead to a conviction. *See State v. Pennington*, 1st Dist. Hamilton Nos. C-170199 and C-170200, 2018-Ohio-3640, ¶ 64; *see also Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ("A character witness may be cross-examined as to an arrest whether or not it culminated in a conviction, according to the overwhelming weight of the authority.").

{¶ 20} During his case-in-chief, Mathis presented four character witnesses. The first witness testified that Mathis enjoys a "[v]ery good" reputation in the community for integrity and honesty. She stated "[Mathis has] always been helpful, and very nice, and very honest," and further, that she thought he was a "great guy." The second witness testified that he believed Mathis was a "trustworthy individual" and that he believed the same to be his reputation in the community. The third witness stated that "[h]e's a great guy. He's a good guy." The fourth witness stated "[h]onestly, I think

he's one of the greatest men I met" and that "[e]veryone knows him for just being helpful and a generous man."

{¶ 21} During cross-examination of each witness, the prosecutor inquired whether that person's opinion of Mathis would change after learning he was arrested for domestic violence and had pleaded guilty or admitted to committing assault and disorderly conduct.

{¶ 22} The prosecutor's attempt to impeach Mathis' character witnesses by referencing Mathis' specific acts was not prosecutorial misconduct. To the contrary, because Mathis put his character at issue through the testimony of his witnesses the prosecutor's subsequent inquiry was appropriate under Evid.R. 405(A).

{¶ 23} Additionally, we reject Mathis' claim that his domestic violence arrest was not a "relevant specific instance [ ] of conduct." Mathis emphasizes that counsel questioned his character witnesses "directly about Mr. Mathis' characteristic [sic] of truthfulness/honesty/trustworthiness." We note that beyond "honesty," the transcript reflects that counsel additionally inquired about Mathis' "integrity" as well as his "character."

{¶ 24} Regardless, the manner in which counsel framed his questions or the specific words that counsel used is irrelevant. *But see State v. Gillard*, 40 Ohio St.3d 226, 533 N.E.2d 272, 535 N.E.2d 315 (1988), at paragraph two of the syllabus ("[A] cross-examiner may ask a question if the examiner has a good-faith belief that a factual predicate for the question exists."). It is a basic principle of law that an attorney's questions or statements are not evidence. *See RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 28, fn. 1, quoting *Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299, 695 N.E.2d 743 (1998) ("We have long held that 'statements of counsel are not evidence.' "). The character evidence in this case was the testimony of Mathis' character witnesses. Based on that evidence, we find the state's inquiry into Mathis' prior arrest was not improper.

(ECF No. 6-1, Exhibit 12).

Applying AEDPA deference, fairminded jurists could agree with the the Eighth Appellate District's holding that the prosecution did not engage in misconduct by asking witnesses about his domestic violence arrest. As an initial matter, I must defer to the Eighth Appellate District's determination that evidence of a prior arrest is admissible under Ohio law even where that arrest does not lead to a conviction. *See Allen*, 845 F.2d at 614 (holding that a habeas court must defer to state courts regarding the interpretation of state rules of evidence

and procedure). I must also defer to the Eighth Appellate District's holding that the prior domestic violence arrest was a relevant instance of prior conduct under Ohio law. Regardless, Mr. Mathis has not demonstrated that the prosecution's questioning regarding the prior arrest rendered his trial so fundamentally unfair as to be a denial of due process. I therefore recommend that the Court alternatively deny Mr. Mathis' second ground for relief.

**C.  Ground Three: Admission of DNA Evidence**

In his third ground for relief, Mr. Mathis argues that his due process rights were violated when the State forensic analyst, Ms. Smith, was permitted to testify that the TrueAllele technology could not exclude Mr. Mathis as a potential source of a sample of DNA taken from the victim's underwear. The Warden responds that Mr. Mathis has procedurally defaulted on this ground, that it constitutes a non-cognizable challenge to a state evidentiary ruling, and that the claim fails on the merits. For the reasons set forth below, the Warden's arguments are well-taken.

*1.  Procedural Default*

Ohio adheres to the "contemporaneous objection" rule, pursuant to which a defendant who fails to contemporaneously object to an alleged trial error waives appellate review of the issue unless the defendant demonstrates plain error. *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). As the Sixth Circuit has repeatedly held, "Ohio's contemporaneous objection rule is an independent and adequate ground to foreclose relief absent a showing of cause and prejudice." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the 'firmly-established Ohio contemporaneous objection rule' is 'an independent and adequate state ground' of decision.") (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

I agree with the Warden that the Eighth Appellate District enforced the

contemporaneous objection rule here. The Eighth Appellate District expressly held that, because Mr. Mathis failed to object to the admission of the DNA evidence at trial, its review was limited to plain error (ECF No. 6-1, Exhibit 12, ¶ 34) ("By failing to object at trial, Mathis has waived all but plain error on appeal."). The Ohio Supreme Court then declined to accept jurisdiction over Mr. Mathis' appeal without comment, leaving the Eighth Appellate District's ruling as the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 805.

It is well-settled that an Ohio court enforces the contemporaneous objection rule for purposes of *Maupin* when it conducts plain error review on appeal. *See Wickline v. Mitchell*, 319 F.3d 813, 823 n.5 (6th Cir. 2003) ("The Ohio Supreme Court's review for plain error constitutes enforcement of this procedural rule, which this court has recognized as an adequate and independent state ground barring federal habeas review."); *Dudas v. Gansheimer*, No. 1:09CV1177, 2010 WL 9038323, at *15 (N.D. Ohio Oct. 1, 2010), *report and recommendation adopted*, 2012 WL 5931783 ("The court proceeded to conduct a plain error analysis, but a plain error review by a state court does not constitute a waiver of the state court's procedural bar."). Mr. Mathis has therefore procedurally defaulted on Ground Three.

Mr. Mathis' procedural default can be excused if he can demonstrate either both cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Mathis argues that the "cause" to exist his procedural default is "defense counsel's failure to object to the suspect expert testimony." (ECF No. 9, PageID # 368). I interpret that as an argument that his trial counsel provided ineffective assistance of counsel.

It is true that ineffective assistance of trial counsel can constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an

ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id.* (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Here, while Mr. Mathis did assert an ineffective assistance of counsel claim before both the Eighth Appellate District and the Ohio Supreme Court, he did not argue that his trial counsel was constitutionally ineffective in failing to object to the introduction of the DNA evidence. Instead, Mr. Mathis argued only that his trial counsel was ineffective in: (1) failing to object to the prosecution's questions regarding his prior arrest and alleged assault conviction; and (2) failing to meet with and prepare a character witness. (ECF No. 6-1, Exhibit 10).

Because Mr. Mathis never fairly presented an argument that his trial counsel was ineffective in failing to challenge the introduction of the DNA evidence, he has defaulted on that claim, and any alleged ineffective assistance on the part of trial counsel cannot constitute cause to excuse his procedural default. *See Hodges*, 727 F.3d at 530 (holding that petitioner could not use alleged ineffective assistance of counsel to excuse procedural default where petitioner failed to present that argument in state court). And, because Mr. Mathis has not demonstrated cause, I need not consider whether he has shown prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice"). Moreover, Mr. Mathis has not argued that his procedural default should be excused because he is "actually innocent." *Schlup*, 513 U.S. at 324. I therefore recommend that the Court dismiss Mr. Mathis' third ground for relief as procedurally defaulted.

### 2. *Merits*

Alternatively, I recommend that the Court dismiss Mr. Mathis' third ground for relief as non-cognizable and/or deny it on the merits.

As a general rule, an error of state law in the admissibility of evidence does not constitute an infringement of a right guaranteed under the United States Constitution, and it is not cognizable in habeas corpus. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000). However, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id.* at 512; *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

The Sixth Circuit has cautioned that "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)); *see also Dowling*, 493 U.S. at 352-53; *Burger v. Woods*, 515 F. App'x 507, 509-10 (6th Cir. 2013) ("A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb"). Under this standard, state court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Beyond demonstrating the error resulted in a denial of fundamental fairness, a petitioner seeking habeas relief based on a state-court evidentiary ruling must also establish "actual prejudice" from the admission of the allegedly improper evidence. *Clemmons v. Sowders*, 34 F.3d 352, 357-58 (6th Cir. 1994); s*ee also Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) (petitioner must show that admission of improper evidence is "material in the sense of a crucial, critical highly significant factor") (quoting *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989)).

Mr. Mathis argues that his due process rights were violated when Ms. Smith was

allowed to testify that he could not be excluded as the source of the DNA sample taken from the victim's underwear. However, "[t]he Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure violates due process." *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017) (holding that state appellate court "was not unreasonable to treat the trial court's error in admitting [disputed evidence] solely as a nonconstitutional issue"); *see also Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("we agree with the district court that *Daubert* concerned the Federal Rules of Evidence which is not relevant to appellant's conviction"). The absence of clearly established Supreme Court precedent is fatal to Mr. Mathis' claim.

Even assuming that admission of the evidence amounted to a constitutional violation, however, Mr. Mathis has not demonstrated that he was actually prejudiced by its introduction. Rather, as the Eighth Appellate District held, "[b]ased on the other evidence in this case, it cannot be said that absent the inconclusive result and the analyst's testimony that the outcome of trial would have been any different," and Mr. Mathis has "failed to establish the error caused him prejudice and was not merely harmless." (ECF No. 6-1, Exhibit 12, ¶¶ 42-43). I agree with the Eighth Appellate District's conclusion. I therefore alternatively recommend that the Court deny this portion of Ground Three on the merits or dismiss it as non-cognizable.

### D. <u>Ground Four: Admission of Testimony Allegedly Bolstering Victim's Credibility</u>

In Ground Four, Mr. Mathis argues that his due process rights were violated when a social worker was permitted to testify that it is common for child sexual abuse victims to initially deny their abuse, as the victim had done here. Mr. Mathis argues that the social worker's testimony constituted impermissible "vouching" or "bolstering" of the victim's

credibility in violation of his constitutional rights.

"It is . . . a high burden for a habeas petitioner to obtain relief based on improper vouching, particularly when the offending testimony comes not directly from the prosecutor but from a government witness." *Alexander v. Harris*, No. 1:19-CV-00234-SO, 2022 WL 993729, at *12 (N.D. Ohio Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 992009. "[E]ven if statements are improper, 'the Sixth Circuit has recognized that improper vouching is rarely sufficient to be afforded habeas relief.'" *Id.* (quoting *Skidmore v. Kelly*, No. 4:11CV1760, 2012 WL 5197251, at *4 (N.D. Ohio Oct. 19, 2012)); *see also Futo v. Smith*, No. 1:09CV3012, 2010 WL 6613675, at *7 (N.D. Ohio Oct. 20, 2010), *report and recommendation adopted*, 2011 WL 1811071 (holding that alleged vouching did not rise to level of constitutional violation).

The Eighth Appellate District rejected Mr. Mathis' argument on the merits, holding as follows:

> {¶ 63} Here, McHugh's opinion that it is "pretty common" for sexually abused children to disclose the abuse in a "long-term disclosure" was based on her firsthand experience of over 22 years and approximately 2,000 cases. *Compare State v. Whittsette*, 8th Dist. Cuyahoga No. 70091, 1997 WL 67764, at 4, 1997 Ohio App. LEXIS 500, at 12-13 (Feb. 13, 1997) (detective's testimony that he doubted a wound was caused by a particular caliber of bullet was proper under Evid.R. 701 based on detective's familiarity with guns and past observations of wounds caused by various caliber bullets) *with Lee v. Baldwin*, 35 Ohio App.3d 47, 49, 519 N.E.2d 662 (1st Dist.1987) (police officer's lay witness opinion that plaintiff caused accident by proceeding against red light was inappropriate where officer arrived on scene after collision and thus lacked requisite firsthand knowledge about who caused it) *and McKee*, 91 Ohio St.3d 292, 297-298, 744 N.E.2d 737 (2001) (witnesses' "sketchy and conclusory" testimony about identity of controlled substance, including one girl's unsupported statement that she "assumed it was" marijuana with no further explanation, lacked sufficient foundation of experience or knowledge to constitute admissible lay opinion). Moreover, her opinion here was helpful to determination of a fact at issue in this case, namely, whether Mathis assaulted the victim in the manner she described despite the inconsistency between her initial and subsequent statements.

> {¶ 64} We note that at no point in her testimony did the social worker offer an opinion about whether the victim was telling the truth, nor did she offer an opinion about

28

whether Mathis was the perpetrator. *See State v. Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203, ¶ 48 (8th Dist.), citing *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989) ("It is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements."); *compare State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31 (police officer's testimony that accused was being "very deceptive" was erroneously admitted); *compare State v. Young*, 8th Dist. Cuyahoga No. 79243, 2002-Ohio-2744 (police officer's testimony that he believed a witness was being truthful "divested the jury of its ability and right to decide the credibility of [the defendant]").

{¶ 65} We further note that the trial court instructed the jury: "[y]ou are the sole judges of the facts, and the credibility of the witnesses, and the weight to be given to the testimony of each witness." *See Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, citing *State v. Fox*, 133 Ohio St. 154, 12 N.E.2d 413 (1938) ("A presumption always exists that the jury has followed the instructions given to it by the trial court"); *see also State v. Frye*, 5th Dist. Richland No. 17CA5, 2017-Ohio-7733, ¶ 28 ("The jury remained the ultimate factfinder in the case and the [lay witnesses'] opinions were not findings of fact or ultimate conclusion in the case.").

(ECF No. 6-1, Exhibit 12).

I agree with the Eighth Appellate District's reasoning and conclude that any alleged vouching or bolstering by the social worker did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Mason v. Brunsman*, 483 F. App'x 122, 131 (6th Cir. 2012) (rejecting argument that alleged improper vouching by prosecutor deprived habeas petitioner of due process) (quoting *Darden*, 477 U.S. at 181); *see also Wogenstahl*, 668 F.3d at 329 (holding that any vouching on part of prosecutor was harmless where "the evidence against [the defendant] was strong, the comments were isolated, and the comments were unlikely to mislead the jury or prejudice [the defendant]").

Mr. Mathis also argues that the social worker's testimony was not supported by science and amounted to expert testimony that was not accompanied by an expert report or a *Daubert* hearing. As discussed above, however, the Supreme Court has never held that *Daubert* challenges are cognizable on habeas review. *See Bojaj*, 702 F. App'x at 320. I therefore recommend that the Court dismiss Mr. Mathis' fourth ground for relief as non-

cognizable and/or deny it on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].").  In light of the Rule

11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Mathis has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Mathis' petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). I also recommend that the Court not grant him a certificate of appealability.

Dated: November 30, 2023

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).