UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID L. MATHIS, | ) | Case No.: 1:21 CV 169 |
| Petitioner | ) ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| WARDEN KENNETH BLACK, | ) ) | |
| Respondent | ) | ORDER |

Currently pending before the court in the above-captioned case is Petitioner David Mathis's ("Mathis" or "Petitioner") Petition for a Writ of Habeas Corpus ("Petition") (ECF No. 1), pursuant to 28 U.S.C. § 2254. Under Local Rule 72.2, the court referred the matter to Magistrate Judge William H. Baughman ("Judge Baughman"). The case was later reassigned by General Order to Magistrate Judge Jennifer D. Armstrong ("Magistrate Judge" or "Judge Armstrong") to prepare a Report and Recommendation ("R & R"). For the following reasons, the court adopts Judge Armstrong's R & R (ECF No. 11) and denies Mathis's Petition in its entirety. The court also declines to issue Mathis a Certificate of Appealability.

**I. BACKGROUND**

**A.      Factual Background**

The following is a brief summary of the facts established at the Petitioner's trial. After an

incident at school, A.T., the 12-year-old victim in this case, went to a local subway station to obtain a ride home from school. (R & R at PageID #401, ECF No. 11). While there, she met Mathis, who was over 50 years old at the time and ran a café at the station. (*Id.*) A.T. told Mathis about the incident at school, and informed him that she was afraid to go home. (*Id.*) As it turns out, A.T. had been given detention at school and so she worried her mother would be upset with her. (*Id.*) Upon hearing this, Mathis offered to provide A.T. with a motel room for the night. (*Id.*) However, once the two arrived at the motel, Mathis proceeded to perform various sexual acts with the child, including kissing her breasts and vagina and having sex with her. (*Id.*) Mathis eventually left A.T. in the hotel for the night before returning the next morning, when he continued to kiss, fondle, and have sex with her. (*Id.*)

Shortly thereafter, A.T. was taken to the police station where she explained to officers how she met Mathis, that he offered her a motel room for the night, and that he proceeded to kiss, touch, and have sex with her once they arrived at the motel. (*Id.* at PageID #402). A.T. was then taken to the hospital where she was treated and examined for sexual assault. (*Id.*) A.T. told the nurse examining her the same version of events that she told the police. (*Id.*) The hospital also administered a rape kit which found traces of Mathis's genetic material on swabs from A.T.'s breasts, underwear, and fingernail scrapings. (*Id.*) On November 29, 2016, Mathis was indicted for the following charges: (1) six counts of first-degree felony rape in violation of R.C. § 2907.02(A)(1)(b); (2) three counts of felony gross sexual imposition in violation of R.C. § 2907.05(A)(4); and (3) two counts of felony kidnapping with a sexual motivation specification in violation of R.C. §§ 2905.01(A)(4) and 2941.147(A). (*Id.* at PageID #402–03). Mathis pled not guilty to all charges. (*Id*. at PageID #403).

Before trial, Mathis filed a motion *in limine* to exclude testimony from Christine M. Scott ("Scott"), an analyst at the Cuyahoga Regional Forensic Laboratory, regarding DNA evidence analyzed using a technology known as TrueAllele. (*Id.*) Mathis argued that the Government had not demonstrated that TrueAllele was reliable or that Scott was qualified to testify. (*Id.*) The trial court held an evidentiary hearing in response to Mathis's motion. (*Id.*) Ultimately, the court concluded that the technology was reliable under Ohio Rules of Evidence, and that Scott was qualified to testify regarding the results of the TrueAllele analysis. (*Id.* at PageID #403–04). The case then proceeded to trial.

At trial, Mathis testified to the same timeline of events as A.T., but disputed that he ever had sex with her. (*Id.* at PageID #402). He maintained that A.T. was lying and that any genetic material found in the rape kit was transferred to her when she slept in the bed where Mathis and a female friend had previously had sex earlier in the evening on the night in question. (*Id.*) At trial, A.T. explained that she did not initially disclose the full extent of her physical contact with Mathis because she was "scared." (*Id.*) (citing *State v. Mathis*, 107365, 2019 WL 4316889, 2019-Ohio-3654, at ¶ 11 (8th Dist. Sept. 12, 2019)). She also testified that during her interview with the police, she started having "flashbacks" about her assault, which prompted her to relay the full story to officers. (*Id.*)

During trial, Scott testified that part of the results from the TrueAllele analysis were inconclusive due to an insufficient amount of genetic material found on the victim's underwear. (*Id.* at PageID #404). As a result, Scott explained, Mathis could not be excluded as the source of the DNA sample from A.T.'s underwear. (*Id.*) On cross-examination, the prosecution asked several of Mathis's character witnesses if their opinion of him would change if they found out that (1) he had

previously been convicted of assault and (2) he had previously been charged with domestic violence. (*Id.*) However, it is undisputed that Mathis was never convicted of assault. (*Id.*) Also, while Mathis had previously been charged with domestic violence, he was not convicted of that charge because he had pled guilty to a lesser offense. (*Id.*)

Before the close of trial, the prosecution dropped one count of gross sexual imposition and one count of rape against Mathis. (*Id.*) (citing Journal Entry, Ex. 6 to Return of Writ, ECF No. 6-1). The jury went to verdict on the remaining counts and found Mathis guilty on all counts. (*Id.*) (citing Journal Entry of Conviction, Ex. 7 to Return of Writ, ECF No. 6-1). Accordingly, on May 31, 2018, the court sentenced Mathis to life with a possibility of parole after 20 years on each of the counts of rape and kidnapping, and a term of five years on both counts of gross sexual imposition. (R & R at PageID #404–05, ECF No. 11). The court ordered that Mathis's sentences would run concurrently.

**B.  Procedural Background**

On June 25, 2018, Mathis filed a notice of appeal to the state appellate court challenging his conviction. (*Id.*) After the appellate court affirmed Mathis's sentence, he filed a notice of appeal to the Ohio Supreme Court which declined jurisdiction over the case. (*Id.* at PageID #405–06, ECF No. 11). Mathis then filed the instant Petition on January 21, 2021, asserting the following grounds for relief:

> GROUND ONE:      Ineffective assistance of counsel
>
> Supporting Facts:      Trial counsel provided ineffective assistance in violation of Mathis's Sixth amendment right by: (1) failing to repeatedly object to the prosecution's assertion that Mathis had been convicted of assault and arrested for domestic violence and (2) failing to interview one of Mathis's character witnesses ahead of trial.
>
> GROUND TWO:      Prosecutorial misconduct

| | |
|---|---|
| Supporting Facts: | The prosecution violated Mathis's due process rights guaranteed by the 14th amendment by falsely asserting that Mathis had been convicted of assault when in fact he had not. |
| GROUND THREE: | Admission of misleading evidence |
| Supporting Facts: | The trial court violated Mathis's due process rights under the 14th amendment by permitting expert testimony regarding DNA evidence from the victim's underwear despite the expert testifying that she could not conclusively determine or exclude Mathis as the source of the genetic material. |
| GROUND FOUR: | Introduction of improper expert testimony |
| Supporting Facts: | The trial court violated Mathis's due process rights under the 14th amendment by permitting one of the prosecution's witnesses, a social worker, to testify regarding the disclosure habits of child-victims of sexual assault. |

(Pet. at PageID #23–30, ECF No. 1-2). Warden Kenneth Black ("Respondent" or "Warden Black") filed a Return of Writ (ECF No. 6) on May 21, 2021. In it, Respondent argues that Mathis procedurally defaulted on his third claim for relief by failing to present that ground before the state courts on direct appeal. (Return of Writ at PageID #47–52, ECF No. 6). As to Petitioner's other three grounds for relief, Respondent contested each of those claims on their merits. (*See id.* at PageID #52–79). On August 4, 2021, Mathis filed his Traverse (ECF No. 9) followed by a correct Traverse on August 5, 2021 (ECF No. 10).

On September 2, 2022, the case was reassigned by General Order from Judge Baughman to Judge Armstrong. Judge Armstrong subsequently submitted her R & R on November 30, 2023 (ECF No. 11). Having found that Petitioner's four grounds for relief are without merit, and that Petitioner has procedurally defaulted on his third claim for relief, Judge Armstrong recommends that the court deny Mathis's Petition in its entirety and not grant him a Certificate of Appealability. (R & R at

PageID #400, ECF No. 11). More specifically, Judge Armstrong determined that Mathis's ineffective assistance of counsel claim failed under the "extremely deferential" standard attorneys are afforded under *Strickland v. Washington*, 466 U.S. 668 (1984), which presumes that attorneys render adequate assistance and exercise reasonable professional judgment in representing their clients. (*See id.* at PageID #412–17). Judge Armstrong also concluded that, because the state court had adjudicated Mathis's ineffective assistance of counsel claim on the merits on direct appeal, the district court must afford the state court's decision an additional layer of deference. (*See id.* at PageID #413–14) (citing *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011)) ("Because the Michigan court of appeals reviewed [Petitioner's] ineffective-assistance claim on the merits, we give the state court's adjudication AEDPA deference."); *see also* 28 U.S.C. § 2254(d). The Magistrate Judge similarly found Mathis's prosecutorial misconduct claim unavailing because the state appellate court had adjudicated the claim on the merits and determined that the prosecutor's conduct was harmless in context of the trial as a whole. (*See id.* at PageID #417–422). Accordingly, she concluded that the state court's determination should also be afforded AEDPA deference. (*Id.* at PageID #420).

With respect to Mathis's challenge regarding the admissibility of the DNA evidence and the Government's DNA expert witness, Judge Armstrong agreed with the Ohio appellate court that Mathis had procedurally defaulted on this claim because he failed to object to the admissibility of the DNA evidence at trial. (*Id.* at PageID #422). The Magistrate Judge also found fatal to Mathis's third claim the absence of clearly established Supreme Court precedent holding that an error of state law regarding the admissibility of evidence constituted a cognizable basis for habeas relief. (*Id.* at PageID #424–26). Finally, Judge Armstrong agreed with the state court's conclusion that Mathis's challenge regarding the social worker's testimony was without merit because the witness's testimony

did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." (*Id.* at PageID #428) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also Mason v. Brunsman*, 483 F. App'x 122, 131 (6th Cir. 2012). Judge Armstrong also concluded that because the Supreme has never held that *Daubert* challenges are cognizable on habeas review, Mathis's argument that the social worker's testimony should be excluded as improper expert testimony was similarly in vain. (R& R at PageID # 428, ECF No. 11) (citing *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017). Petitioner filed his Objection to the Magistrate Judge's R & R on January 2, 2024 (ECF No. 12). This case is now ripe for review.

## II. LAW AND ANALYSIS

As the Magistrate Judge pointed out, Mathis's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (*See* R & R at PageID #406–07, ECF No. 11). Under the AEDPA statute, a petition for a writ of habeas corpus cannot be granted to a person in custody as a result of a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §§ 2254(d)(1) and (2). Under § 2254(d)(1)'s "unreasonable application" language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle[...] but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In order for this to be the case, the state court's application of the law must be "objectively unreasonable," not just incorrect or erroneous. *Id.* This standard is intentionally "difficult" for prisoners to meet. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011)

("If [AEDPA] standard [for granting habeas relief] is difficult to meet, that is because it was meant to be.")

Although Mathis indicates he raises general objections to Judge Armstrong's conclusions with respect to claims one, three and four, he sets forth specific objections only regarding the R & R's recommendation in respect to his second ground for relief: the allegation of prosecutorial misconduct. (*See generally* Obj., ECF No. 13). In his Objection, Mathis contends that the Magistrate Judge erroneously deferred to the state appellate court's conclusion on his prosecutorial misconduct claim because the state court performed a harmless error analysis when it should have performed a "prejudicial effect" analysis of the prosecutor's words. (*Id.*) More specifically, Mathis argues that federal law requires courts to conduct a "prejudicial effect" analysis to determine the "probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly". (*Id.* at PageID # 440) (citing *United States v. Young*, 470 U.S. 1, 12 (1985)). The court finds Petitioner's argument unpersuasive.

The Supreme Court has held that, "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *Young*, 470 U.S. at 11. As the state appellate court, the Magistrate Judge, and Mathis's Objection all point out, a prosecutor's improper remarks "must be *examined within the context of the trial* to determine whether the prosecutor's behavior amounted to prejudicial error." *Id.* at 12 (emphasis added). Here, the state court did exactly that and determined that the prosecutor's conduct was harmless and therefore not prejudicial. The Eighth District Court of Appeals for Ohio concluded that, "[e]ven were we to assume that the state's mention of an assault conviction was improper, *when viewed in the context of the entire trial*, we find that the state's reference to an assault conviction to

be harmless." (R & R at PageID #419–420, ECF No. 11) (emphasis added). Despite Mathis's contention, the Supreme Court does not "require more" of the state court. (Obj. at PageID #441, ECF No. 13). In fact, the Supreme Court has held that federal courts on habeas review can tolerate much less of an explanation from state courts. *See Harrington*, 562 U.S. at 97–98 (finding that a federal court on habeas review must still defer to a state court's adjudication of a claim even when the state's order is "unaccompanied by an opinion explaining the reasons relief has been denied"). Because the state court already adjudicated Petitioner's prosecutorial misconduct claim on the merits, the court rejects Mathis's sole objection.

In his Objection, Mathis also implies that the state court's decision was an unreasonable application of federal law. (*See* Obj. at PageID #440–41, ECF No. 13) More specifically, Mathis contends that because the state court and the Magistrate Judge both concluded that the prosecutor's remarks regarding Mathis's non-existent assault conviction amounted to misconduct, "it can be said that 'no fair-minded jurist' would disagree" that the prosecutor's remarks were improper. (*See id*. at PageID #440). Mathis's argument misses the mark. The Supreme Court's test in *Young* is not intended to determine whether the prosecution's remarks amounted to misconduct. Rather, the purpose of the test is to assess "the probable effect" of the misconduct to determine whether the remarks were so prejudicial that they deprived the defendant of a fair trial. *See Young*, 470 U.S. at 11–12. The fact that two jurists agreed that the prosecution's remarks in this case amounted to misconduct—a point that the Government also conceded— is irrelevant to the question of whether "fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents." (R&R at PageID #411, ECF No. 11) (quoting *Harrington,* 562 U.S. at 102). Accordingly, the proper inquiry on habeas review is whether the Eighth District Court of Appeals

for Ohio's conclusion—that the prosecutor's remarks were ultimately harmless in context of the entire trial—was so unreasonable, such that "no fair-minded jurist could disagree that the state court's decision conflicts with this Court's precedents." *Harrington*, 562 U.S. at 102. Mathis makes no argument that meets this intentionally high bar for habeas relief. Accordingly, the court finds that Mathis's Objection is without merit.

### III. CONCLUSION

After careful *de novo* review of the R & R, Mathis's Objection, and all other relevant documents in the record, the court finds that Judge Armstrong's recommendation is fully supported by the record and controlling case law. Accordingly, the court adopts the R & R and hereby denies and dismisses the Petition. The court also certifies that there is no basis on which to issue a Certificate of Appealability. Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

February 21, 2024